Caldwell, Ch.
I dissent from the opinion of the majority of the Court.
The instrument under which the plaintiff claims the slaves is of a peculiar character, and certainly demands all the scrutiny we can give it, before" it should receive the sanction of being considered a valid deed.
The mode of construction, adopted in the circuit decree, has been admitted tó be correct; the whole instrument must be taken together, which will enable us to perceive the intention of the maker, and to comprehend fully the object he had in view, far better than can be obtained from the most minute examination of its several parts, without connecting them together.
It will, therefore, be fair to construe the concluding words, 11 at my death” in the same way as if they preceded the expression, “ do give and make over,” as their transposition in the sentence cannot essentially change the idea they are intended to convey; but it is, perhaps, unimportant what place they may occupy, as they constitute the hinge upon which the whole instrument hangs.
The first objection to its being a deed, (independently of the question of its delivery,) arises from the established principles of the law. A few references to the elementary writers, will put this point heyond controversy.
The great commentator, in discussing the two modes, (gift and contract,) of acquiring a title to property in things personal, says : “they are much connected together, and answer in some measure to the conveyances of real estates, being those by gift or grant, and by contract; whereof the former, vests property in possession — the latter, property in action. Grants or gifts of chattels, personal, are the act of transferring the right and possession of them, whereby one man renounces and another man immediately acquires all title and interest therein, which may be done either in writing or by word of mouth, attested by sufficient evidence, of which the delivery of possession is the strongest and most essential.— A true and proper gift or grant is always accompanied by delivery of possession, and takes effect immediately, as if A gives to B £100 or a flock of sheep, and puts him in possession of them directly; it is then a gift executed in the donee, *398 and it is not in the donor’s power to retract it, though he did it without any consideration or recompence. But if the gift does not take effect by delivery of immediate possession, it is then not properly a gift, but a contract; and this a man cannot be compelled to perform, but upon good and sufficient consideration.” These principles, which have been so accurately and admirably expressed in the commentaries, which have embodied the elements of almost everything that is excellent in the common law, are not the mere dicta of a theorist, but of a learned professor and a practical jurist, who derived them not only from some of the most ancient authors, but from the great masters of the law, such as Perkins, Plow-den, Coke and Cotnyn, and from the reports that are acknowledged as the highest authority.
Kent. Com.
“ Every gift,” says Chancellor Kent, “ which is rendered perfect by delivery, and every grant, are executed contracts, for they are founded on the mutual consent of the parties in reference to a right or interest passing between them. Gifts inter vivos have no reference to the future, and go into immediate and absolute effect.” After speaking of parol gifts, he proceeds : “ the necessity of delivery has been maintained in every feriad of English law; donatio perficitur possessions accipientis, was one of its ancient maxims. It is nevertheless hinted or assumed, in ancient and modem cases, that a gift of a chattel, by deed or writing, might do without delivery, for an assignment in writing would be tantamount to delivery.” He then cites several cases establishing the contrary, and continues, “ delivery in this, as in every other case, must be according to the nature of the thing. It must be secundum subjectdmmateriam, and be the true and effectual way of obtaining the command and dominion of the subject. If the thing be not capable of actual delivery, there must be some act equivalent to it. The donor must part not only with the possession, but with the dominion of the property.”
The same principles have been laid down in the dictionaries of Jacob, Tomlins and Bouvier, and have been recognized in the abridgements of Bacon, Comyn, Yiner and Dane, and I know of no elementary work in which they have ever been controvei ted. The very nature of personal property, which derives its definition from its characteristic of accompanying the person of the owner, demonstrates the necessity and propriety of these principles. The mode of transferring the title to real and personal property, is very different. A gift of the latter, inter vivos, must invariably be evidenced either by possession or by some equivalent act; it must be transferred to the donee either by actual or constructive deliv-" ery in presentí. The object of conveying a chattel by deed, is to substitute the symbolical for the real delivery, and there *399 fore the former is necessarily the mere shadow of the latter, which is the substance.
With what propriety can it be said that there has been either an actual or a constructive delivery to a donee, where a life estate is reserved in the donor, whose dominion over the property has not been interrupted, and whose right to the possession is as perfect and unimpaired as before the execution of the deed? The owner cannot give and keep it by the same act, nor can a deed, uno jlatu, perform the inconsistent function of transmitting a title at the donor’s death, and reserving the title in him for' life, unless the same person can combine in himself the opposite characters of grantor and grantee; and there is no point better settled, or more certain in the law, than the proposition that no man can be his own lessor.
' The nature of a gift and the effect of delivery, whether actually or by deed, is to pass an interest to the donee in presentí, and to render the act irrevocable by the donor.
The doctrine of remainders affords striking illustrations of this view. Where there is an estate or interest in remainder, created by deed, there must always be a particular estate to support it; and every remainder must be a part of one and the same estate, out of which the preceding particular estate is taken. There is another equally inflexible rule, that the remainder must commence or pass out of the grantor at the time of the creation of the particular estate. But this cannot be done where the donor creates no particular estate, and merely undertakes to grant an interest, 10 take effect and be enjoyed after his death.
The whole estate or interest must, be transmitted by deed to the donee at the same time, to give validity to a remainder, otherwise it is void for want of a particular precedent estate to support it. The particular estate is not only essential to a remainder, but in conveyances of. personal property, where the limitation over is too remote,.it absorbs the whole interest in the first taker, and excludes the remainderman.
The material distinctions between a deed and a will, are as to the time when they are to take effect; the former begins in the present, the latter is to wait for the future: the one transfers the possession or dominion of the property to the donee, in the lifetime of the don< r, and is irrevocable; the other is ambulatory till the death of the testator — the one must begin in life, the other cannot commence till death ; the former-needs no witness, the latter requires no less than three witnesses : but it is unnecessary to pursue this parrellel further, except to remark that the law has thrown extraordinary guards and securities around the property of the deceased, who might, if he were alive, by a word explain, or by a wit *400 ness disprove any unjust claim that might be preferred to his property.
The expression, life estate, from its analogy and aptness, is applied to the interest that one may have in a chattel, although the word estate belongs alone appropriately to the interest that a person has in lands, tenements and hereditaments; and this results from the nature of personal property, which was considered (as it often actually is) consumable in the use, and does not ordinarily endure longer than one’s life.
From numerous cases in the reports of Coke, Plowden and Croke, and those of much more modern date, we find the principle has been very clearly established that a termor may grant a lease to commence at a future time, and the deed will be valid; but this depends, first, upon the consideration, which must be valuable — which contra-distinguishes it from a gift, which is purely gratuitous; but it has been expressly decided that he cannot make a gift to commence at his death, because it would be .making a deed perform the functions of a will; and much more strongly must the rule prevail with us, whose Statute of 1824 requires three witnesses to a will of personalty. There is not a single case that I have been able to find in an English report, in which a life estate has been reserved to the donor, and remainder in a chattel, limited to take effect m another at the death of the donor, but has been held to be null and void. Nay more, when such provision occurs even in the habendum, and there has been a grant of the term absolutely in the premises, the former has been invariably held to be repugnant and void; and the same judgment of course would be pronounced where there was no grant in presentí, and the estate was to take effect in futuro.
In a leading case, twice reported in Salkeld, Germain and wife v. Orchard, a lessee for years granted the lands leased, to W. R., his executors, administrators and assigns, haben-dum to him and to bis executors, &c. after the death of the grantor and his wife. Lord Chief Justice Holt was of opinion that the grantee was but a tenant at will, “ for it did not appear that the grantor meant to pass his whole interest, and this is enough to satisfy the grant; but if a termor devises the land, all his term passes, for a devisee cannot be a tenant at will.” This judgment was reversed in the Exchequer Chamber, and the case was subsequently carried to the House of Lords, were the reversal was sustained : the ground upon which the appellate Court put the question, was that, by the premises, the whole term passed to the grantee, and that the habendum being repugnant to the premises, was null and void. This decision is directly in point, both as to the quantum of interest in the property conveyed, and the time when the title must be transmitted to the donee.
Yes. Sr.431,
Rice L. Rep. 310-
Black. Com. 338,4 Cruise g^feí-s on '“w. & T.
(ford’s L. R. 198, 2 Hill’s L- R-548Porter Ia' gram, 4 Me-
That case has not only never been overruled in England, but has not been questioned. The deed in that case is dis-( tinguishable from this instrument; that had separate parts, and was not a jumble of premises and habendum in the same sentence; but if the premises had contained the words, “after the death of the grantor and his wife,” can there be any doubt as to the construction 1
A principle, very analogous to this, prevails in the doctrine of a gift donatio causa mortis, where, to give it effect, the donor must part not only with the possession of the property by delivery, but with all dominion over it. In the case of Ward v. Turner, the subject of such gifts was thoroughly2 considered by Lord Hardwicke, that great light of the law, and he strongly denounces the doctrine of a symbolical delivery, and demonstrates, by argument and authority, the necessity of adhering to the principle.
We have an apt illustration of the doctrine, in the case of Hall v. Howard, where the Court lays it down that “to con-1 stitute a valid gift, either inter vivos or causa mortis, the donee must have an immediate right to dommion of the chattel ; in the latter case, defeasable at the recovery of the donor. When the corpus of the thing is put in his possession, his dominion is complete, and his title is as good against the donor as any one else. The deed gives him a right to take under his- dominion the thing described ; the donor cannot dispute his right; when the chattel is a slave, or a horse, or a cow, there can be little difficulty.
“ I have no doubt,” adds the Judge, delivering the opinion, but money may be the subject of such a gift, when it is in a box or a bag, and has specific identity. I think this may be regarded as a tolerable test, in all cases, where the donee could assert and successfully maintain his title in an action of trover to the thing given — the gift would be good in law: but where the donor has secured any control in himself, or has omitted to give, by valid transfer, the entire dominion to another, the law will not support the transfer as a gift, either inter vivos or causa mortis.”
As to this instrument being a good conveyance to stands seized to the donee’s use, it is only necessary to remark that the Statute of Uses does not embrace personal property, and such a covenant, connected with a chattel, has never been sustained either in England or America as a good conveyance under that Statute. The whole doctrine to real estate, and to a class of cases within which this case could not under any circumstances come. is restricted
The second objection to this anomalous instrument, is that it is not in- conformity with any precedent heretofore established and used as a mode of conveying title to personal property.
l Bail. L. Rep. too.
This proposition cannot be questioned by any one who compare, or rather contrast it with the approved forms: bear no resemblance to it; it is janus faced; as you approach it it appears as if it were a deed, but look on the Other side and it is a will; to one privilege it is clearly entitled, to stand “ alone in the solitude of its own originality.” If it be transplanted and engrafted upon the ancient stock of precedents, and if it should be adopted into general use, it will introduce a new era in conveying personal property; the consequences of which cannot now be calculated, except that it will become unintentionally the most ingenious device that has ever been invented, to evade the Act in relation to bequests of personalty, and will supersede the probate of many a paper that might want the number of witnesses requisite for a will. One witness, or even the proof of the donor’s hand writing, would be sufficient to establish it as a deed.
From the principles and precedents of the common law, “ all and any part” of which, in the language of the Act of 1712, was adopted in South Carolina, except where the'same was not altered by enumerated Statutes, or was not inconsistent with the particular constitutions, customs or laws of the province; it is absolutely certain that this instrument could not operate as a deed, and would be adjudged null and void, not only from its testamentary character, but from the inconsistency and repugnancy that is apparent upon its face.
Nothing has given such stability to our system of law, or created such unlimited confidence in its excellence, as the established rules .that have been adopted in construing contracts and preserving inviolate the distinction between deeds and wills. It may well be doubted whether any better rules can he applied in the administration of justice, than those that the accumulated wisdom of ages has furnished ready to our use.
Here I approach the only debateable ground in the case; have our own decisions overruled the common law, and established the doctrine that a donor may create a remainder of personalty in a donee, to take effect after the death of the donor, who reserves a life estate 1
I shall not discuss a number of the cases cited, that are either irrelevant, or have a remote bearing upon the question, as nothing is more fallacious than fanciful analogies drawn from remote resemblances; they are like taking the outlines of a shadow as the evidence of the real dimensions of the substance, which can be measured with certainty, and ascertained beyond dispute.
The proposition that a personal chattel may be limited over by deed, after a life estate has been created in it, without a conveyance to uses, has not been questioned since the case of Powell v. Brown, although that was not the most *403 material point on which the case turned. By that deed the ■slaves were conveyed to Nancy Powell, the wife of the plaintiff, “ to have and to hold the same to her and her issue for-' ever; if the said Nancy Powell should die without issue, the said slaves should return, at her decease, to the surviving heirs” of the donor; she died without leaving issue at her death, and the defendant (the donor) converted the slaves to his own use, for which her husband brought trover ; and the Court held, in addition to the above stated proposition, that the grantor could not take under a limitation over to his own heirs contained in his own deed, and that the marital rights of the husband of the donee attached, and were not divested by the contingency happening when the limitation over was incapable of vesting.
3Brevar(j.g Reports, 411.
Ba-L Riley’s L.PC.
The case precisely in point as to the creation of a remainder, and the reservation of a life estate, is Vernon v. Inabnitj there the deed of gift was to the then sons of the donor, on condition that the donor should keep possession of the ne-groes during his life, and that after his death they should pass into the possession of the donees respectively; and the Court held that the deed could not take effect. “ It is settled law,” says Judge Brevard, “that a man cannot limit a personal chattel to one for life and remainder to another, except by will or deed of trust: in the first case the property passes by way of executory bequest; and in the second, it vests in the trustee for the uses and purposes in the deed declared. Now if a life estate in a chattel cannot be carved out by deed without the intervention of trustees, in whom the legal estate must vest for the benefit of others, with what propriety can it be contended that a man can carve out of a chattel interest a life estate for himself, and convey the remainder, which, from the nature of the interest, must be uncertain and contingent, to another, to vest in the remainder-man after the death of the donor ? To allow such gifts would be mischievous in the consequences that would result to creditors and subsequent purchasers; and besides, cui boni ? what necessity for such gifts, when the same effect may be produced and the same object attained by a last will and testament? We are of opinion the deed of gift passed no property to the donee, as possession did not accompany and follow it.”
The principle established in paroi gifts is not only consistent with the doctrine laid down in this case, but strongly il~ lustrates and supports it. In the case of Pitts v. Mangum, and McGinney v. Wallace, the gifts would have been good by the delivery of the chattel, if the reservation of possession and dominion had not been incompatible with and repugnant to the nature of a gift. It is in vain to say that the title passed by a deed, (making the same reservation,) which operates only by its being a symbolical and substituted delivery, *404 when an actual delivery of the chattel itself to the donee (with the same reservation expressed in the deed,) would be ’ insufficient to constitute it a gift. There is no law requiring a gift of personalty to be made by deed, and it has been expressly held, in Brummett v. Barber, that one may by writing not under seal, or verbally, create a limitation over by way of trust, or as a direct gift, so that the same disposition may be made by parol accompanied with delivery, that can be 'done by deed. And why not? The act of delivery carries the title and draws to it the right of possession and dominion, as effectually as can be done by a deed, for there is neither distinction or difference between what is done and what is written, as far as personalty is concerned; it does not exist merely by grant in writing, but by possession and the right of dominion ; and any other view would be inconsistent with the principles of the law, and would overrule these three cases, that have been too firmly established to be now shaken.
3 gill’s Rep. 443. -yVelch v. Ki-nard.
MSS. Cas.es D.
The case of Duke v. Dyches approaches this question ; but it must be remarked that the terms of that instrument (which was held a valid deed) were very different from those employed in this instrument.
The learned Judge who delivered the opinion in that case had been counsel in the case of Vernon v. Inabnit, ánd probably had not forgotten what had been adjudged in it, and with a cautious reservation states that the only question submitted, was whether personal property can be limited over. The testamentary character of the instrument was not invol-> ved in the discussion or decision. But it has been supposed that question had been considered in the Court of Equity in Dyches et ql. v, Trotti et al, but on examination of the opinion of the Court of Appeals, it is apparent that although the Circuit Chancellor considered it a deed, the Court of Appeals did not either discuss or decide it. It cannot therefore be considered as a quesfion adjudged by that Court, and their opinion cannot be implied in its favor from their silence on the subject. It is plain the Court were then leaning in favor of putting slaves upon the same footing (as far as could be done by construction) with real estate, and that object may, in a gréat degree, have controlled the current of cases during that period of our judicial history. As the constitution has provided ample means for making and reforming the law, when the interests of the country require it, it is safer to leave the legislative department to the exercise of its own powers, and to confine judicial functions to their appropriate sphere, the administration of the law as it is, without attempting to amend or make it. The character of that instrument is not left to conjecture, for it calls itself a deed, and there was no doubt ráised, either as to the intention of the donor, or its delivery. From all the circumstances under which that case, *405 was presented to the Court, it may be distinguished from the present; but if the proper exception had been taken in the argument and considered by the Court, it would have been much more satisfactory and conclusive. The next case which has been relied on is Dawson v. Dawson ; there the grantor first made a will and afterwards executed a deed in absolute terms, in which he appointed a trustee and engrafted his will upon the deed, continued in possession of the property for many years, but represented himself, not as the owner of it, but as holding it for his children under these instruments : that case cannot be considered as strictly analogous to this, and the resemblance supposed to exist results more from the ciicumstance that the donor enjoyed the property during his life, than from the legal effect of the deed upon the interests of the donees.
Rice’s E. R. 343‘
1826. MSS. Gases.
Fowler v. Caldwell v.’ Wilson, 2 sPeers’ R-75.
The next case is that of Harris v. Saunders; from the statement of it in the manuscript, it is apparent that the evidence was abundantly sufficient to sustain the gift. One of the witnesses testified that he drew a deed with a reservation of a life estate in the donor, but that witness did not see it executed; another testified that he heard the donor acknowledge he had given (which was sufficient to support a parol gift,) to his illegitimate son, the plaintiff, the negro boy Andrew, the subject of the suit, but that he feared that his wife had destroyed the deed; these and other acknowledgments of the donor were testified to, on the trial, which were sufficient, independently of the deed, to establish a gift. The correct view of this case was presented in argument of the case of Toung v. Moore, and it ought,not to be considered a case in point.
The last case that I shall notice on this side is Sunday v. Boon, which was not quoted in the argument; there the donor had executed an instrument on her second marriage, making provision for the maintenance and support of her children (by a former husband) after her decease: the property conveyed was both real and personal, and was on certain trusts and conditions, reserving the use of it to herself. She after-wards separated from her husband and they executed another deed, recognizing the former ; the Court held that the first was not testamentary, and it is plain from the face of the two deeds that the judgment was correct. The result of all these cases is, that they do not decide the question in the present case.
The cases of Ragsdale v. Booker, and Welch v. Kinard, are, I think, not only analogous to, hut identical with this case. The first case is not reported, but it appears from the manuscript records, that the objection that the paper was not delivered is unfounded, and that there was no doubt of that fact, and the case therefore depended upon the. con *406 struction given to the instrument, which was to take effect at the death of the maker.
2 Kellv Rep 31. p'
The other case was where a paper was prepared at the instance 0f the maker, and signed, sealed and delivered, and afterwards recorded in the office of Register of Mesne Conveyance ; it was, like the former, in the shape of a deed, but to take effect “ after the death” of the maker; in both these cases the Court held the papers were testamentary.
These cases have neither been overruled nor questioned, and I cannot perceive how this case can be distinguished in principle from either of them.
If I had time, the views which I have offered could be strengthened and illustrated by numerous cases decided by the Supreme Court of North Carolina, which finally led to the adoption of an Act in-1823, expressly providing that “any limitation, by deed or writing, of a slave or slaves, which limitation if contained in a last will and testament, would be good and effectual as an executory devise or bequest, shall be a good and effectual limitation in remainder of such slave or slaves.” Before this Statute such limitation (like the one before us) was held void.
The last case to which I shall refer is one that has recentty been decided by the Supreme Court of Georgia, Hester, ex'r. v. Young. The instrument was as follows: “Know all men by these presents, I, William Womack, in consideration of natural love and affection for my son Frederick Wo-mack, I do give unto him the following property. Three hundred acres of land which I now live on, two negroes, William and Nancy, two horses and the rest of my stock of hogs and cattle, together with my household furniture, after my death and the death of my wife, to have and to hold the said property forever. Signed, sealed and delivered,” &c. It was recorded in the county, seven days after its execution. The Court, after an elaborate examination of all the authorities, especially of our own cases, came to the unanimous conclusion that this paper was a will, not a deed. In that case, as in this, great reliance was placed upon the form of the instrument, but the Court very properly held that'could not control the estate conveyed, and if the intention, gathered from the whole paper, is that the estate is not to pass, or the instrument take effect until the maker’s death, it is a will and not a de.ed. In conclusion, if this paper before us be not a will, it will be difficult to determine the character of such an instrument, either from the definitions in the books, the deduction of argument, or the authority of cases.
O’Neall, J. concurred.